# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| DEBORAH COOPER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:18-CV-423-HAB |
| | ) |
| BRUNSWICK LEISURE BOAT | ) |
| COMPANY, LLC, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This case once again calls upon the Court to resolve a dispute between a terminated Plaintiff and her former employer. Plaintiff asserts that she was subject to sexual harassment while in Defendant's employ and that, when she reported the harassment, she was fired in retaliation. Not so, Defendant retorts, and points to an incident of alleged harassment by Plaintiff as the cause for her termination.

Now before the Court is Defendant's Motion for Summary Judgment (ECF No. 41). Defendant claims that the actions alleged by Plaintiff do not support a claim for a hostile workplace and that she cannot demonstrate pretense with respect to Defendant's claimed reason for firing Plaintiff. Having reviewed the designated facts and the parties' briefs, the Court concludes that Defendant is correct. Therefore, summary judgment will be entered in Defendant's favor.

**A.      Background Facts**

From 2014 to 2018, Plaintiff was employed by Defendant at its Fort Wayne, Indiana, boat manufacturing facility. Plaintiff worked in various positions during her employment and, at the time of her termination, performed quality control in the helms department.

On February 16, 2018, Plaintiff made a report to Human Resources Supervisor Anne Decot ("Decot"). Plaintiff reported that one of her co-workers, Guillermo Reyes ("Reyes"), had taken a picture of her while on the job and sent it to another co-worker. Plaintiff also reported that Reyes had touched her, more than once but less than five times, on her hand, back, and hair. Decot responded that perhaps the touching was a part of Reyes' "culture," a suggestion that Plaintiff, also Hispanic, denies. A couple of days prior to meeting with Decot, Plaintiff told Reyes' supervisor that Reyes had made comments about Reyes and Plaintiff doing things together on the weekend. It does not appear that Plaintiff provided this information to Decot during their meeting.

Over the course of the next week, Decot and Human Resources Manager Adrienne Clark ("Clark") interviewed both Reyes and the co-worker that received the picture of Plaintiff. Both men told Decot that the picture was not of Plaintiff, but rather of a boat that Plaintiff happened to be working on at the time the picture was taken. It appears from the record that no disciplinary action was taken against Reyes. It also appears that, following the investigation, Plaintiff had no further issues with Reyes.

Now, some background into Plaintiff's personal life that will become important later. In May 2016, Plaintiff began dating Adrian Bates ("Bates"), a co-worker at Defendant's plant. Sometime later, Bates started dating another co-worker, Vath Phouayvongsa ("Vath"), all the while continuing his relationship with Plaintiff. The relationship between Bates and Vath progressed to the point that Bates moved in with Vath. Plaintiff heard rumors about the relationship at the plant, but Bates denied that he and Vath were an item.

On March 2, 2018, Plaintiff was involved in two separate incidents. First, Plaintiff told Vath's supervisor to stay away from Vath, accusing the two of sleeping together. This was problematic both because of the content of the statement and because Plaintiff had gone out of her

assigned work area. Next, Plaintiff and another co-worker, Jessica Owen ("Owen") were involved in a verbal altercation with Vath. Both incidents were reported to Clark by Vath's supervisor.

On March 5, 2018, Vath complained directly to Clark that, because of Owen and Plaintiff's constant gossiping about Vath, she was ready to quit. Vath reported that the gossiping had recently gotten worse, with Plaintiff "texting her, giving her nasty looks, and starting rumors about her." According to Vath, Plaintiff had started the rumor about Vath sleeping with her supervisor to break up Vath and Bates.

Three days later, Vath reported to Clark that Plaintiff was "out of control." Plaintiff was now texting and calling yet another co-worker, Krystal Miller ("Miller") about Vath. Miller confirmed this report, telling HR that Plaintiff was calling her three to four times per night in addition to texting. Miller was eventually forced to block Plaintiff on social media and her phone. Miller stated that the comments about Vath had been ongoing since August 2017. Clark was also told by Vath's supervisor that "it was getting out of control on the floor," that Plaintiff was leaving her assigned work area, and that Vath was "very upset."

That same day, Plaintiff, her supervisor, and Clark met to discuss the situation. Plaintiff claimed that, in fact, it was Vath that was hostile towards her. However, Clark had reviewed video of the March 2, 2018, incident, and told Plaintiff that the video did not support Plaintiff's version of events. Plaintiff further claimed that she was in Vath's area because she was "helping." This statement was contradicted by Plaintiff's supervisor, who stated that he had no idea Plaintiff was leaving the helms department. At the conclusion of this meeting, Plaintiff was sent home pending an investigation into the situation.

On March 9, 2018, Clark spoke with another of Plaintiff's co-workers who also said that Plaintiff had made comments to him about Vath, her supervisor, and Bates. Clark was also told that Plaintiff repeatedly went out of her work area to talk about Bates and Vath.

A final meeting was held on March 15, 2018, to discuss the findings of the investigation. The meeting was attended by Plaintiff, her manager, Clark, and another HR employee. Plaintiff was told that the investigation had uncovered several allegations of Plaintiff harassing Vath. As a result of this harassment, and Plaintiff repeatedly leaving her work area, Plaintiff was terminated.

For her part, Plaintiff calls the alleged bases for her firing "made up," "dishonest and fabricated." However, other than these conclusory statements in her affidavit, Plaintiff has designated no evidence of any other version of events.

**B.    Legal Analysis**

**1.    *Summary Judgment Standard***

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Additionally, a court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

## 2. *Plaintiff has not Demonstrated a Hostile Work Environment*

In order to establish a hostile work environment on the basis of sex, a plaintiff must show that: (1) she was subjected to unwelcome harassment in the form of verbal or physical conduct of a sexual nature; (2) the harassment was based on the plaintiff's sex; (3) the harassment was severe or pervasive enough to create an abusive working environment; and (4) there is a basis for employer liability. *Quantock v. Shared Mktg. Servs., Inc.*, 312 F.3d 899, 903 (7th Cir. 2002); *see also Jackson v. County of Racine*, 474 F.3d 493, 499 (7th Cir. 2007).

As the Seventh Circuit has noted, for a plaintiff to show a hostile work environment, the alleged harassment must be both subjectively and objectively hostile. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005). Moreover, "'[i]n determining whether the environment was objectively hostile, the court must consider all of the circumstances, including the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with an employee's work.'" *Id.* (quoting *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975 (7th Cir. 2004)). "Indeed, the threshold for plaintiffs is high,

as the workplace that is actionable is one that is hellish." *Id*. (internal quotation and citation omitted); *see also Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004) (finding that actionable harassment is that which subjects the employee to "multiple levels of workplace trauma."). Whether such an environment exists is a question of law. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999).

Defendant raises several arguments in response to the hostile work environment claim, but the Court finds its pervasiveness argument to be determinative. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "[T]he line between actionable and nonactionable sexual harassment 'is not always easy'..."; it is not governed by a "mathematically precise test." *Robinson v. Sappington*, 351 F.3d 317, 329 (7th Cir. 2004). "The 'occasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers generally does not create a work environment that a reasonable person would find intolerable.'" *Id*. (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995)). However, when the offensive conduct is proved to be so severe, even isolated incidents may potentially create a hostile work environment for the employee. *See Hilt–Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002.).

After considering "all of the circumstances," the Court finds that the facts of this case fall far short of a hostile work environment. While there is no timeframe given over which Reyes' conduct occurred, the number of events does not indicate that they were frequent. Taking the high end of Plaintiff's estimates, there were five incidents of touching, a "handful" of statements about the two meeting up over the weekend, and two pictures in which Plaintiff appeared. This is not a

number that has been considered actionably frequent by courts. *See, e.g.*, *Overly v. KeyBank Nat. Ass'n*, 662 F.3d 856, 862 (7th Cir. 2011) (referring to plaintiff as "cutie" five to ten times over the course of two months not sufficiently pervasive).

Nor does the Court find Reyes' conduct to be particularly severe. Assuming that Reyes' conduct was sexual in nature, it was relatively innocuous. Reyes' statements were, at worst, unwanted requests for a date. This does not make a "hellish" workplace. *See Moser v. Ind. Dept. of Corr.*, 406 F.3d 895, 902 (7th Cir. 2005) (no hostile work environment where co-worker referred to plaintiff's "tits," commented on female job applicants' physical appearance, made an innuendo about his penis size, and said that a female co-worker needed "a good f*ck). Nor does Reyes' touching of Plaintiff's hand, hair, and back rise to the necessary level of severity. *See McPherson v. City of Waukegan*, 379 F.3d 430, 439 (7th Cir. 2004) (pulling back plaintiff's tank top to look at her bra did not create a hostile work environment); *Hilt-Dyson*, 282 F.3d at 463–64 (rubbing plaintiff's back, squeezing her shoulders and staring at her chest during uniform inspection insufficient to create a hostile work environment).

Finally, the Court does not find that Reyes' conduct was threatening or that it interfered with Plaintiff's work. The Court does not doubt that Reyes' interest in Plaintiff was unwanted, and Reyes need not be congratulated for his arguably boorish conduct, but there is no evidence in the record that it ever stopped Plaintiff from completing her work tasks or that she, or anyone else, viewed it as anything other than offensive.

The Court must be careful to "not mistake ordinary socializing in the workplace — such as male-on-male horseplay or intersexual flirtation — for discriminatory 'conditions of employment.'" *Oncale*, 523 U.S. at 81. The Court finds that the designated evidence supports a finding that the activity in this case falls into the former category rather than the latter. Therefore,

summary judgment will be entered in Defendant's favor on Plaintiff's hostile work environment claim.

**3.     *Defendant had a Legitimate, Non-Pretextual Reason to Terminate Plaintiff***

Title VII makes it unlawful "for an employer to discriminate against any of his employees ... because he [or she] has opposed any practice made an unlawful employment practice [by Title VII]." 42 U.S.C.2000e–3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must establish that "(1) she engaged in what our case law refers to as 'statutorily protected expression' (i.e. reporting or otherwise opposing conduct prohibited by Title VII, such as sexual harassment), (2) she suffered an adverse, job-related action by her employer ... and (3) there is a causal link between her opposition to unlawful discrimination and [the adverse action]." *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1146 (7th Cir. 1997) (citing *McKenzie v. Illinois Dep't of Trans.*, 92 F.3d 473, 483 (7th Cir. 1996)).

Like other Title VII claims, a plaintiff alleging retaliation may proceed under either a direct or indirect method of proof. *Bernier v. Morningstar, Inc.*, 495 F.3d 369, 375 (7th Cir. 2007). Defendant analyzes Plaintiff's claims under framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and Plaintiff does not object to this method, so the Court will do the same.

> [T]he adaptation of McDonnell Douglas to the retaliation context, requires the plaintiff to show that after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner. If the defendant presents no evidence in response, the plaintiff is entitled to summary judgment. If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment. Otherwise there must be a trial.

*Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Regardless of method employed, the ultimate question is "whether the evidence [considered as a whole] would

permit a reasonable factfinder to conclude" that the plaintiff suffered retaliation. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Assuming Plaintiff can meet her initial burden, Defendant has presented "unrebutted evidence of a noninvidious reason for the adverse action." While the conduct underscoring Plaintiff's firing sounds more like a teenage drama than a fireable offense, the record is clear that Defendant took the allegations seriously. The investigation involved eight different witnesses. The report stretches over five pages. (ECF No. 42-1 at 64–68). Plaintiff had two different meetings with HR representatives to discuss the allegations. Whatever the merits of the termination, Defendant's evidence establishes that it was the result of Plaintiff's interactions with and regarding Vath that motivated the decision.

Plaintiff's only response is to deny that she harassed or mistreated Vath. But, as Defendant notes, the veracity of the allegations against Plaintiff is beside the point. "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000). Pretext is not necessarily established merely when the plaintiff demonstrates the employer's reason was mistaken. An employer's mistaken belief that the plaintiff's conduct merited termination is not unlawful, so long as the belief was honestly held. *See Wade v. Lerner N.Y., Inc.*, 243 F.3d 319, 323 (7th Cir. 2001) (plaintiff's age discrimination claim failed where her employer mistakenly, but honestly, believed the plaintiff had been late for work). Because Plaintiff has offered no evidence tending to show that Defendant's belief was not honestly held, her retaliation claim must fail.

## C. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 41) is GRANTED. The Clerk is DIRECTED to enter judgment in favor of Defendant and against Plaintiff.

SO ORDERED on June 24, 2021.

 s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT
